**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**WILMINGTON DIVISION**

**In the Matter of:**
**DYMITA ENTERPRISES, INC.,**
**Debtor.**

**Chapter 11**
**Case No.: 26-04044-5-JNC**

## MOTION FOR CONTEMPT AND SANCTIONS FOR VIOLATION OF THE AUTOMATIC STAY

NOW COMES Dymita Enterprises, Inc. ("Debtor"), by and through undersigned counsel of record, and respectfully moves the Court, pursuant to 11 U.S.C. §§ 105 and 362, for an order finding Wells Fargo Bank, N.A. ("Wells Fargo") in contempt of court and granting Debtor appropriate sanctions for Wells Fargo's willful violation of the automatic stay. In support of this motion, Debtor shows the Court the following:

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 151, 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157.

## FACTUAL BACKGROUND

2. On September 4, 2026 ("Petition Date"), Debtor filed a petition for relief under Chapter 11, Subchapter V of the Bankruptcy Code.

3. On Debtor's schedules it listed a pre-petition checking account Wells Fargo ending in 8148 ("Wells Fargo Checking Account"). Additionally, Debtor listed Wells Fargo as a secured creditor with a claim for $168,320.16, secured by collateral valued at $49,186.14 [Dkt. No. 1, p. 18] and a unsecured creditor with one claim for $28,414.53 and a second unsecured claim for $6,378.79.

4. On Petition Date, Debtor filed an *Emergency Motion for Authority to Use Cash Collateral Pursuant to 11 U.S.C. § 363* ("Cash Collateral Motion"). [Dkt. No. 3]. On the Cash Collateral Motion, Debtor listed Wells Fargo as creditor that might have an interest cash collateral.

On Petition Date, Debtor mailed a copy of the Cash Collateral Motion, including notice of the Cash Collateral Hearing to Debtor

5. On the Petition Date, Debtor mailed a copy of the Petition and a copy of its Cash Collateral Motion to Wells Fargo.

6. On September 8, 2026, the Court held a hearing where it granted Debtor's Cash Collateral Motion. [Dkt. No. 15]. Wells Fargo did not file a response in opposition to Debtor's Cash Collateral Motion and counsel for Wells Fargo did not appear at the hearing.

7. On September 8, 2026, Wells Fargo mailed counsel for Debtor that Wells Fargo placed a hold on Debtor's Wells Fargo Checking Account. On September 9, 2026, Wells Fargo emailed a copy of the letter to counsel for Debtor. After counsel for Debtor made multiple demands Wells Fargo to release the hold, Wells Fargo eventually agreed to release the hold.

8. On September 15, 2026 (*i.e.,* six days after Wells Fargo released the hold), Wells Fargo made three withdrawals from Debtor's Wells Fargo Checking Account: (1) a principal payment of $7,013.30, (2) an interest payment of $208.58, and (3) a late charge payment of $346.12 (collectively, "Post-Petition Withdrawals"). Thus, despite Wells Fargo's actual knowledge of Debtor's bankruptcy case, it withdrew a total of $7,568.00.

9. On September 16, 2026 at 8:33 am, counsel for Debtor emailed Wells Fargo, and requested the Wells Fargo immediately return the Post-Petition Withdrawals. Wells Fargo did not respond.

10. On September 17, 2026, at 10:28 pm, counsel for Debtor sent Wells Fargo a second email requesting Wells Fargo return the Post-Petition Withdrawals. Wells Fargo did not respond.

11. On September 22, 2026, counsel for Debtor finally received a response from Wells Fargo. Wells Fargo stated that a request to reverse the payment and return the funds had been submitted. Counsel for Debtor sent another email on September 25, 2026 advising Wells Fargo

that Debtor had not yet received the funds, and asked Wells Fargo to "[p]lease advise ASAP." Wells Fargo responded on September 25, 2026 that "I am checking with the relationship manager to see how long the refund requests typically take." Counsel for Debtor has not heard further from Wells Fargo since that email.

12. As of the time of this filing, Wells Fargo has not returned the Post-Petition Withdrawal.

**STATEMENT OF THE LAW AND ARGUMENT**

13. Under the Bankruptcy Code, the filing of a petition has "certain immediate consequences." *City of Chicago v. Fulton*, 592 U.S. 154, 156 (2021). Among other consequences, the filing of a bankruptcy petition acts as a stay applicable to all entities for "'any act to collect, assess, or recover a claim against the debtor that arose before the commencement'" of the debtor's bankruptcy case. *In re Kimbler*, 624 B.R. 774, 778 (Bankr. E.D.N.C. 2020) (quoting 11 U.S.C. § 362(a)(6) (emphasis removed)). Thus, a party who attempts to collect or recover a pre-petition debt from a debtor violates the automatic stay.

14. Violations of the automatic stay are not taken lightly. The "automatic stay is one of the most fundamental and important protections given to debtors under the Bankruptcy Code." *In re Franklin*, 614 B.R. 534, 543-44 (Bankr. M.D.N.C. 2020) (citing *In re Barrow*, 2015 WL 1545684, at *3 (Bankr. E.D.N.C. Mar. 31, 2015); *In re Wright*, 608 B.R. 648, 652 (Bankr. W.D. Va. 2019) ("The automatic stay is a bedrock principle upon which the Code is built; the importance of § 362 cannot be over-emphasized." (citations and internal quotation marks omitted)). Consistent with the importance of automatic stay, Congress created a cause of action that allows a party injured by a willful violation of the automatic stay to "recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances . . . punitive damages." 11 U.S.C. § 362(k)(1).

15. As a preliminary consideration, and prior to a debtor recovering damages for a willful violation of the automatic stay, the Bankruptcy Code requires a debtor to demonstrate the party alleged to have violated the automatic stay had "appropriate" notice of the debtor's bankruptcy case. 11 U.S.C. § 342(a); *See Wright v. Owens Corning*, 679 F.3d 101, 107 (3d Cir. 2012) (implying that § 342(a) is intended to satisfy due process). Notice is not required to be formal as long as it provides a creditor with adequate information to know of a debtor's bankruptcy case. *In re Lyle*, 662 B.R. 229, 235 (Bankr. E.D.N.C. 2024). Moreover, a debtor may provide a creditor with sufficient notice if one of the creditor's agents learns of the debtor's bankruptcy proceeding. *In re Nocek*, No. 19-01364-5-SWH, 2020 WL 1809790, at *3 (Bankr. E.D.N.C. Apr. 7, 2020) (stating "it is generally the law of agency that a principal is chargeable with notice given to the agent while the agent is acting within the scope of his authority, even when the agent does not inform the principal of notice.") (internal citation omitted).

16. Although the Bankruptcy Court only requires *adequate* notice, when a creditor receives *actual* notice of a debtor's bankruptcy case, courts "'presume the violation was deliberate.'" *In re Defeo*, 635 B.R. 253, 262 (Bankr. D.S.C. 2022) (quoting *Fleet Mortg. Group, Inc. v. Kaneb*, 196 F.3d 265, 269 (1st Cir. 1999)). Once a debtor has established the "'creditor receiv[ed] actual notice, the burden shifts to the creditor to prevent violations of the automatic stay.'" *Defeo*, 635 B.R. at 262 (quoting *Kaneb*, 196 F.3d at 269); *In re Rijos*, 263 B.R. 382, 392 (B.A.P. 1st Cir. 2001) (holding that after a debtor establishes actual notice the "[d]efendant bears the burden to prove that it took steps to prevent violations of the automatic stay and rebut the inference that the stay violation was willful.").

17. After establishing notice, a debtor seeking to recover damages for a willful violation of the automatic stay must show (1) "a violation of the stay occurred," (2) "the violation was willful," and (3) "the violation caused actual damages." *In re Kimbler*, 624 B.R. 774, 779 (Bankr.

E.D.N.C. 2020). For a debtor to establish the violation was willful, "willfulness does not refer to the intent to violate the automatic stay, but the intent to commit the act which violates the automatic stay." *In re Lofton*, 385 B.R. 133, 140 (Bankr. E.D.N.C. 2008). Once the court determines a creditor committed a willful violation of the automatic stay, "the language of § 362(k)(1) *requires* recovery of actual damages, inclusive of costs and attorneys' fees." *In re Henderson*, No. 09-50596, 2011 WL 1838777, at *3 (Bankr. E.D. Ky. May 13, 2011) (emphasis in original).

18. Here, Wells Fargo willfully violated the automatic stay when it made the Post-Petition Withdrawal. With respect to notice, the hold Wells Fargo placed on Debtor's Well Fargo Checking Account and the letter Wells Fargo sent regarding the hold clearly demonstrate that Wells Fargo had actual knowledge of Debtor's bankruptcy case. Therefore, the notice requirement is easily satisfied.

19. Despite its actual knowledge, Wells Fargo withdrew a total of $7,568.00. Wells Fargo made this withdrawal in order to recover on its pre-petition claims against Debtor. Consequently, Wells Fargo violated the automatic stay. Based upon the notice Wells Fargo received, it is presumed Wells Fargo deliberately violated the automatic stay and Wells Fargo must rebut the inference that its automatic stay violation was willful.

20. The $7,568.00 withdrawn from the Wells Fargo Checking Account clearly constitutes actual damages. In addition, Debtor has suffered damages based upon the loss of use of funds caused by the Post-Petition Withdrawal.

21. In sum, Wells Fargo took $7,5680.00 from Debtor, failed to respond to multiple emails from counsel, and has allowed over two weeks go by without returning the Post-Petition Withdrawal.

WHEREFORE, Debtor prays that the Court enter an order:

1. Finding Wells Fargo willfully violated the automatic stay;

2. Awarding Debtor actual damages, including return of the Post-Petition Withdrawal, loss of use of the Post-Petition Withdrawal, and lost revenue for any time spent attending hearings related to the violation;

3. Awarding Debtor actual damages for its attorney's fees and costs associated with prosecuting this motion;

4. Imposing punitive damages against Wells Fargo for its willful violation of the automatic stay; and

5. For such other and further relief as the Court may deem just and proper.

This the 1st day of October, 2026.

The Law Offices of George Oliver, PLLC

By: s/George M. Oliver
George M. Oliver
N.C. State Bar No. 26587
Email: george@georgeoliverlaw.com
PO Box 1548
New Bern, NC 28563
Telephone: (252) 633-1930
Facsimile: (252) 633-1950
*Attorneys for Debtor*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**WILMINGTON DIVISION**

| | |
|---|---|
| **In the Matter of:** | **Chapter 11** |
| **DYMITA ENTERPRISES, INC.,** | **Case No.: 26-04044-5-JNC** |
| **Debtor.** | |

**NOTICE OF DEBTOR'S MOTION FOR CONTEMPT AND SANCTIONS FOR VIOLATION OF THE AUTOMATIC STAY**

NOTICE IS HEREBY GIVEN of the Debtor's Motion for Contempt and Sanctions for Violation of the Automatic Stay (the "Motion") filed simultaneously herewith in the above captioned case;

FURTHER NOTICE IS HEREBY GIVEN that this Motion may be allowed provided no response and request for a hearing is made by a party in interest on or before [14 DAYS]; and

FURTHER NOTICE IS HEREBY GIVEN, that if a response and a request for a hearing is filed by a party in interest in writing within the time indicated, a hearing will be conducted on the Motion and response thereto at a date, time and place to be later set by the Court and all interested parties will be notified accordingly. If no request for a hearing is timely filed, the Court may rule on the Motion and response thereto *ex parte* without further notice. Any party filing an objection requesting a hearing shall appear at said hearing or they may be taxed with Court costs.

This the 1st day of October, 2026.

The Law Offices of George Oliver, PLLC

By: s/George M. Oliver

George M. Oliver
N.C. State Bar No. 26587
Email: george@georgeoliverlaw.com
PO Box 1548
New Bern, NC 28563
Telephone: (252) 633-1930
Facsimile: (252) 633-1950
*Attorneys for the Debtor*

## **CERTIFICATE OF SERVICE**

I, George Mason Oliver, PO Box 1548, New Bern, North Carolina 28563, certify:

That I am at all times hereinafter mentioned was, more than eighteen (18) years of age;

That on the 1st day of October, 2026 I served copies of the foregoing pleading on the parties listed below via CM/ECF or by U.S. Mail, First Class, sufficient postage prepaid, as indicated.

I certify under penalty of perjury that the foregoing is true and correct.

This the 1st day of October, 2026.

The Law Offices of George Oliver, PLLC

By: s/George M. Oliver
George M. Oliver
N.C. State Bar No. 26587
Email: george@georgeoliverlaw.com
PO Box 1548
New Bern, NC 28563
Telephone: (252) 633-1930
Facsimile: (252) 633-1950
*Attorneys for Debtor*

To:

| | |
|---|---|
| Bankruptcy Administrator | (via CM/ECF) |
| Richard P. Cook<br>*Subchapter V Trustee* | (via CM/ECF) |
| Dymita Enterprises, Inc.<br>PO Box 3580<br>Wilmington, NC 28406<br>*Debtor* | (via U.S. Mail) |
| Wells Fargo<br>Attn: Deposits Bankruptcy Dept.<br>4101 Wiseman Blvd.<br>San Antonio, TX 78251 | (via U.S. Mail) |
| Wells Fargo Bank N.A.<br>Attn: Managing Agent<br>PO Box 659712<br>San Antonio, TX 78265 | (via U.S. Mail) |
| Wells Fargo | (via U.S. Mail) |

Attn: Managing Agent
PO Box 29482
Phoenix, AZ 85038-8650

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**WILMINGTON DIVISION**

**In the Matter of:**
**DYMITA ENTERPRISES, INC.,**
**Debtor.**

**Chapter 11**
**Case No.: 26-04044-5-JNC**

**ORDER GRANTING MOTION FOR CONTEMPT AND SANCTIONS FOR VIOLATION OF THE AUTOMATIC STAY**

**THIS MATTER**, having come before the Court on Dymita Enterprises, Inc.'s ("Debtor") motion for an order finding Wells Fargo in contempt of court and granting Debtor appropriate sanctions for its violations of the automatic stay. The Court having considered the pleadings in this matter and arguments of counsel, makes the following **FINDINGS OF FACT** and **CONCLUSIONS OF LAW**:

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 151, 157 and 1334. This is core proceeding pursuant to 28 U.S.C. § 157.

2. On Debtor's schedules it listed a pre-petition checking account Wells Fargo ending in 8148 ( "Wells Fargo Checking Account"). Additionally, Debtor listed Wells Fargo as a secured creditor with a claim for $168,320.16, secured by collateral valued at $49,186.14 [Dkt. No. 1, p. 18] and a unsecured creditor with one claim for $28,414.53 and a second unsecured claim for $6,378.79.

3. On Petition Date, Debtor filed an *Emergency Motion for Authority to Use Cash Collateral Pursuant to 11 U.S.C. § 363* ("Cash Collateral Motion"). [Dkt. No. 3]. On the Cash Collateral Motion, Debtor listed Wells Fargo as creditor that might have an interest cash collateral. On Petition Date, Debtor mailed a copy of the Cash Collateral Motion, including notice of the Cash Collateral Hearing to Debtor

4. On the Petition Date, Debtor mailed a copy of the Petition and a copy of its Cash Collateral Motion to Wells Fargo.

5. On September 8, 2026, the Court held a hearing where it granted Debtor's Cash Collateral Motion. [Dkt. No. 15]. Wells Fargo did not file a response in opposition to Debtor's Cash Collateral Motion and counsel for Wells Fargo did not appear at the hearing.

6. On September 8, 2026, Wells Fargo mailed counsel for Debtor that Wells Fargo placed a hold on Debtor's Wells Fargo Checking Account. On September 9, 2026, Wells Fargo email a copy of the letter to counsel for Debtor. After counsel for Debtor made multiple demands Wells Fargo to release the hold, Wells Fargo eventually to release the hold.

7. On September 15, 2026 (*i.e.,* six days after Wells Fargo released the hold), Wells Fargo made three withdrawals from Debtor's Wells Fargo Checking Account: (1) a principal payment of $7,013.30, (2) an interest payment of $208.58, and (3) a late charge payment of $346.12 (collectively, "Post-Petition Withdrawals"). Thus, despite Wells Fargo actual knowledge of Debtor's bankruptcy case, it withdrew a total of $7,568.00.

8. On September 16, 2026 at 8:33 am, counsel for Debtor emailed Wells Fargo, and requested the Wells Fargo immediately return the Post-Petition Withdrawals. Wells Fargo did not respond.

9. On September 17, 2026, at 10:28 pm, counsel for Debtor sent Wells Fargo a second email requesting Wells Fargo return the Post-Petition Withdrawals. Wells Fargo did not respond.

10. On September 22, 2026, counsel for Debtor finally received a response from Wells Fargo. Wells Fargo stated that a request to reverse the payment and return the funds had been submitted.

11. Nevertheless, Wells Fargo did not return the Post-Petition Withdrawal.

12. Under the Bankruptcy Code, the filing of a petition has "certain immediate consequences." *City of Chicago v. Fulton*, 592 U.S. 154, 156 (2021). Among other consequences, the filing of a bankruptcy petition acts as a stay applicable to all entities for "'any act to collect, assess, or recover a claim against the debtor that arose before the commencement'" of the debtor's bankruptcy case. *In re Kimbler*, 624 B.R. 774, 778 (Bankr. E.D.N.C. 2020) (quoting 11 U.S.C. § 362(a)(6) (emphasis removed)). Thus, a party who attempts to collect or recover a pre-petition debt from a debtor violates the automatic stay.

13. Violations of the automatic stay are not taken lightly. The "automatic stay is one of the most fundamental and important protections given to debtors under the Bankruptcy Code." *In re Franklin*, 614 B.R. 534, 543-44 (Bankr. M.D.N.C. 2020) (citing *In re Barrow*, 2015 WL 1545684, at *3 (Bankr. E.D.N.C. Mar. 31, 2015); *In re Wright*, 608 B.R. 648, 652 (Bankr. W.D. Va. 2019) ("The automatic stay is a bedrock principle upon which the Code is built; the importance of § 362 cannot be over-emphasized." (citations and internal quotation marks omitted)). Consistent with the importance of automatic stay, Congress created a cause of action that allows a party injured by a willful violation of the automatic stay to "recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances . . . punitive damages." 11 U.S.C. § 362(k)(1).

14. As a preliminary consideration, and prior to a debtor recovering damages for a willful violation of the automatic stay, the Bankruptcy Code requires a debtor to demonstrate the party alleged to have violated the automatic stay had "appropriate" notice of the debtor's bankruptcy case. 11 U.S.C. § 342(a); *See Wright v. Owens Corning*, 679 F.3d 101, 107 (3d Cir. 2012) (implying

that § 342(a) is intended to satisfy due process). Notice is not required to be formal as long as it provides a creditor with adequate information to know of a debtor's bankruptcy case. *In re Lyle*, 662 B.R. 229, 235 (Bankr. E.D.N.C. 2024). Moreover, a debtor may provide a creditor with sufficient notice if one of the creditor's agents learns of the debtor's bankruptcy proceeding. *In re Nocek*, No. 19-01364-5-SWH, 2020 WL 1809790, at *3 (Bankr. E.D.N.C. Apr. 7, 2020) (stating "it is generally the law of agency that a principal is chargeable with notice given to the agent while the agent is acting within the scope of his authority, even when the agent does not inform the principal of notice.") (internal citation omitted).

15. Although the Bankruptcy Court only requires *adequate* notice, when a creditor receives *actual* notice of a debtor's bankruptcy case, courts "'presume the violation was deliberate.'" *In re Defeo*, 635 B.R. 253, 262 (Bankr. D.S.C. 2022) (quoting *Fleet Mortg. Group, Inc. v. Kaneb*, 196 F.3d 265, 269 (1st Cir. 1999)). Once a debtor has established the "'creditor receiv[ed] actual notice, the burden shifts to the creditor to prevent violations of the automatic stay.'" *Defeo*, 635 B.R. at 262 (quoting *Kaneb*, 196 F.3d at 269); *In re Rijos*, 263 B.R. 382, 392 (B.A.P. 1st Cir. 2001) (holding that after a debtor establishes actual notice the "[d]efendant bears the burden to prove that it took steps to prevent violations of the automatic stay and rebut the inference that the stay violation was willful.").

16. After establishing notice, a debtor seeking to recover damages for a willful violation of the automatic stay must show (1) "a violation of the stay occurred," (2) "the violation was willful," and (3) "the violation caused actual damages." *In re Kimbler*, 624 B.R. 774, 779 (Bankr. E.D.N.C. 2020). For a debtor to establish the violation was willful, "willfulness does not refer to the intent to violate the automatic stay, but the intent to commit the act which violates the automatic stay." *In re Lofton*, 385 B.R. 133, 140 (Bankr. E.D.N.C. 2008). Once the court determines a creditor committed a willful violation of the automatic stay, "the language of § 362(k)(1) *requires* recovery

of actual damages, inclusive of costs and attorneys' fees." *In re Henderson*, No. 09-50596, 2011 WL 1838777, at *3 (Bankr. E.D. Ky. May 13, 2011) (emphasis in original).

17. Here, Wells Fargo willfully violated the automatic stay when it made the Post-Petition Withdrawal. With respect to notice, the hold Wells Fargo placed on Debtor's Well Fargo Checking Account and the letter Wells Fargo sent regarding the hold clearly demonstrate that Wells Fargo had actual knowledge of Debtor's bankruptcy case. Therefore, the notice requirement is easily satisfied.

18. Despite its actual knowledge, Wells Fargo withdrew a total of $7,568.00. Wells Fargo made this withdrawal in order to recover on its pre-petition claims against Debtor. Consequently, Wells Fargo violated the automatic stay. Based upon the notice Wells Fargo received, it is presumed Wells Fargo deliberately violated the automatic stay and Wells Fargo must rebut the inference that its automatic stay violation was willful.

19. The $7,568.00 withdrawn from the Wells Fargo Checking Account clearly constitutes actual damages. In addition, Debtor has suffered damages based upon the loss of use of funds caused by the Post-Petition Withdrawal.

20. In sum, Wells Fargo took $7,5680.00 from Debtor, failed to respond to multiple emails from counsel, and has allowed over two weeks go by without returning the Post-Petition Withdrawal.

**WHEREFORE**, it is hereby **ORDERED** and **DECREED** that:

1. Wells Fargo willfully violated the automatic stay;

2. Debtor is awarded actual damages including lost use of funds and for lost revenue for any time spent attending hearings related to the violation;

3. Debtor is awarded actual damages for its attorney's fees and costs associated with prosecuting this motion; and

4. Debtor is awarded punitive damages against Wells Fargo for its willful violations of the automatic stay.

**END OF DOCUMENT**